1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  BARBARA J. VALLIERE (DCBN 439353)
   Assistant United States Attorney
5        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
6        Telephone: (415) 436-7039
         FAX: (415) 436-7234
7        barbara.valliere@usdoj.gov

8  Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) CASE NO. CR-19-00592-VC |
|---|---|
| Plaintiff, | ) **UNITED STATES' MOTION TO ORDER DEFENDANT DETAINED** |
| v. | ) |
| WILLIAM ALEXIS-VILLA, | ) Judge: Hon. Sallie Kim |
| Defendant. | ) Date: November 22, 2019<br>) Time: 10:30 a.m. |

PLEASE TAKE NOTICE that on November 22, 2019, at 10:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Sallie Kim, Magistrate Judge of the District Court for the Northern District of California, the United States will and hereby does move the Court for an order to remand William Alexis-Villa, a defendant in the above-captioned matter, to the custody of the United States Marshal's Service pending trial on the crimes with which he is charged. This motion is brought under 18 U.S.C. § 3142(e) on the grounds that, on the present record, evidence establishes that no condition or combination of conditions can assure the appearance of the person as required or the safety of any other person and the community.

## I. INTRODUCTION

On November 7, 2019, a federal grand jury returned an indictment charging William Alexis-Villa with five counts in a six-count indictment all relating to the unlawful possession or unlawful

1

dealing in firearms without a license. Defendant Alexis-Villa appears to have no criminal record, but the evidence supporting the offenses charged in this case, the defendant's admitted access to caches of firearms, the absence of a Pretrial Services Report, and the lack of information regarding his address, employment, and ties to the community establishes that he is both a flight risk and a danger to the community.

## II. BACKGROUND

### *The Charged Offenses*

On August 6, 2019, a confidential informant (CI) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) noticed an Instagram post advertising a Glock 22 firearm for sale. Declaration of Barbara J. Valliere in Support of the United States' Motion to Order Defendant detained (hereinafter "Decl."), No. 2, Exh. A (ATF Report of Investigation, August 6, 2019) (filed under seal). The CI communicated with the owner of the Instagram account – later identified as co-defendant Francisco Nunez-Nepita – and the two men agreed that Nunez-Nepita would sell the CI a fully automatic Glock firearm for $1350. Exh. A, p. 2. Nunez-Nepita was unable to make the sale in person, so he told the CI that his "friend" would conduct it instead. Exh. A, p.3. The "friend" turned out to be defendant William Alexis-Villa. Exh. A, p. 3. The CI and Alexis-Villa made plans to meet in East Palo Alto to complete the transaction. Exh. A, p. 3.

The CI and a second CI – equipped with video and audio recording equipment – picked up Alexis-Villa at an apartment building in East Palo Alto. Exh. A, pp. 4-5. While en route to the place where the transaction would occur in Menlo Park, Alexis-Villa discussed at length his ability to obtain more fully automatic firearms, large capacity magazines, and rifles. Exh. A, p. 7. As the CI drove Alexis-Villa to the Menlo Park destination, Alexis-Villa showed the CI a video on his cellphone that depicted Alexis-Villa shooting a fully automatic Glock style firearm out of the window of a car as he was driving. Exh. A, p. 7. Alexis-Villa explained that he had fired the weapon as depicted in the cellphone video in East Palo Alto. Exh. A, p. 7; *see also* Decl., No. 5, Exh. D (filed under seal). When they arrived at the Menlo Park location, Alexis-Villa sold the CIs a Glock style firearm outfitted with a Glock "switch" that rendered it fully automatic for $1400. Exh. A, p.7; *see also* Decl., No. 6, Exh. E (filed under seal). To facilitate future transactions, Alexis-Villa provided the CIs with his Instagram

account name – "zopilotemnm"[1] -- warning the CIs that they need to be careful about what they post because law enforcement can get their records. Exh. A, p. 7.

Between August 6 and August 13, 2019, the CI and Alexis-Villa exchanged communication on Instagram anticipating additional firearms transactions. Decl., No. 3, Exh. B, p. 1 (filed under seal). The two men agreed to a sale for three rifles on August 13 that would occur in Menlo Park. Exh. B, p. 1. Moments before the CIs arrived at the location in Menlo Park, an air unit observed a white Dodge pickup truck arrive at the house, and observed Alexis-Villa emerge from the house, run to the truck, retrieve a bag from the back seat, and then go back into the house. Exh. B, pp. 2-3. Co-defendant Erik Acevedo-Cruz was driving the truck. Exh. B, pp. 2-3. Within minutes, the CIs arrived, Alexis-Villa greeted them and led them inside the house. Exh. B, pp. 4-5. In the house, Alexis-Villa and Acevedo-Cruz (while holding a toddler), displayed two rifles, including one that had a barrel of less than 16 inches. Exh. B, p. 4:



After Alexis-Villa explained how to make the rifle automatic, the CIs purchased them both for $3400. Exh. B, p. 4.

On October 10, 2019, the CI and Alexis-Villa communicated via Instagram and discussed the purchase of additional firearms. Decl., No. 4, Exh. C, pp. 1-2 (filed under seal). During their exchanges, Alexis-Villa sent multiple photographs of handguns and other firearms that he had for sale. *See* Exh. C, attachments. One of the photographs depicted both Alexis-Villa (background) and Acevedo-Cruz (foreground) displaying the firearms for sale (*see* Exh. C, p. 2):

---

[1] "Zipilote" means "vulture" in Spanish. According to the San Mateo County Gang Intelligence Unit, "mnm" may be associated with the MNM Norteño criminal street gang. *See* Decl., No. 7.



After the CI and Alexis-Villa negotiated another firearm sale, the CIs met with Acevedo Cruz at the Menlo Park located to conduct the transaction. Exh. C, p. 4. The CIs purchased the three firearms pictured below for $3500:



*Alexis-Villa's Gang Ties*

On November 17, 2019, the San Mateo County Gang Intelligence Unit provided the following information regarding Alexis-Villa's possible gang affiliation:

    a. A member of the Gang Intelligence Unit reviewed photographs posted on social media belonging to Alexis-Villa that show him displaying gang hand signs and associating with other MNM Norteño gang members.

    b. In this case, Alexis-Villa admits to a gang beef with Fair Oak Park (FOP) gang member Augustin Cuevas. See Exh. A, p. 7.

    c. On 02/19/2014, Alexis-Villa was validated by law enforcement as a MNM Norteño gang member.

    d. Alexis-Villa has gang tattoos "East Menlo" on the back of his arms.

Decl., No. 7. Based on this information, the Gang Intelligence Unit concluded that Alexis-Villa is an active member of the MNM Norteño criminal street gang. Decl., No. 7.

*Alexis-Villa Threatens the CI*

During his post-arrest interview with ATF Special Agent Niccolo Coia and Task Force Officer Eric Avila, Alexis-Villa threatened one of the CIs in this case. Specifically, in a video and audio

recorded statement, after being informed that the case against him involved the selling of firearms, Alexis-Villa said "I know who you talking 'bout now . . . I know who he is." Alexis-Villa then added, among other things, that "I'm just saying if he put me here he's looking at something worse . . . at the end of the day." During the interview, Alexis-Villa also referred to the CI by his first name. Based on his demeanor and statements regarding the confidential informant, SA Coia and TFO Avila interpreted Alexis-Villa to be threatening the confidential informant. *See* Decl., No. 8.

### III. ARGUMENT

#### A. Legal standard

When seeking pretrial detention, the government bears the burden to establish that "no condition or combination of conditions will reasonably assure the appearance of [the] person as required and the safety of any other person and the community" if the defendant is released. 18 U.S.C. § 3142(e), (f). The Court must consider four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. 18 U.S.C. § 3142(f).

#### B. The nature and circumstances of the charged offenses demonstrate defendant's easy access to, and cavalier attitude toward, firearms.

The nature and circumstances of the charged offenses readily demonstrate that there are no conditions that will reasonably assure the safety of the community should Alexis-Villa be released. As detailed above and in the Exhibits A-C, Alexis-Villa had ready access to all manner of firearms, including fully automatic weapons and short-barreled rifles that he was ready, willing, and eager to sell. Most troubling, on August 6, 2019, while en route to the location for the first transaction in Menlo Park, Alexis-Villa pulled out his cellphone and demonstrated to the CI – which is caught on video – a video of himself shooting a fully automatic weapon out of a car window while his drove on the East Palo Alto

Street. *See* Exh. D (under seal). Moreover, Alexis-Villa conducted the August 13, 2019, transaction – demonstrating and then selling two rifles to the CIs -- at the Menlo Park residence all while in the presence of a toddler. The danger to specific persons and to the community inherent in such antics and behavior is self-evident.

### C. The weight of the evidence is considerable.

The government's evidence against defendant is compelling. There are audio and video tapes of the defendant engaged in multiple gun transactions, including the sale of illegal firearms, and in possession of those firearms. Defendant communicated his willingness to engage in additional sales of firearms in person, by text, and on Instagram. He even posed with the firearms he sought to sell and sent that photograph to his prospective customer.

### D. Defendant's history and characteristics do not support release.

Defendant has not provided any information to Pretrial Services, so there is no basis upon which to evaluate his family ties, his employment history, his character, or his physical and mental condition. A Pretrial Services records check has revealed that he has no prior convictions.

While there is a dearth of information regarding defendants ties and history supporting release, law enforcement has developed information regarding defendant's gang affiliations. As noted above, the San Mateo County Gang Intelligence Unit has concluded that Alexis-Villa is an active member of the MNM Norteño criminal street gang based on, among other things, photographs that he has posted on social media depicted his display of gang signs, he admitted beef with rival gang members, and gang tattoos on his back. *See* Decl., No. 7.

Finally, during his interview with ATF agents after his arrest, Alexis-Villa threatened the CIs in this case. Specifically, in a video and audio recorded statement, after being informed that the case against him involved the selling of firearms, Alexis-Villa said "I know who you talking 'bout now . . . I know who he is." Alexis-Villa then added, among other things, that "I'm just saying if he put me here he's looking at something worse . . . at the end of the day." He referred to the CI by his first name. Based on his demeanor and statements regarding the confidential informant, SA Coia and TFO Avila interpreted Alexis-Villa to be threatening the confidential informant. Decl., No. 8.

Given this threat, his gang ties, and his brazen use of an automatic weapon during broad

daylight, there is no question that there is a serious potential of danger to CI and to the community at large should Alexis-Villa be released.

**IV.  CONCLUSION**

For the reasons stated above, the Court should order defendant Alexis-Villa detained pending trial.

DATED:  November 21, 2019

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

 */s/ Barbara J. Valliere*
BARBARA J. VALLIERE
Assistant United States Attorney